**J.L. SPOONS, et al., Plaintiffs,**

v.

**CITY OF BRUNSWICK, et al., Defendants.**

**No. 1:97CV3269.**

United States District Court, N.D. Ohio, Eastern Division.

June 1, 1998.

---

J. Michael Murray, Steven D. Shafron, Berkman, Gordon, Murray, Palda & DeVan, Cleveland, OH, for J.L. Spoons, Inc. and Centre Plaza, Inc.

Timothy T. Reid, Reid, Berry & Stanard, Cleveland, OH, for City of Brunswick, Patrick Beyer, Joseph McDermott, Tadeusz Kiernozek, Duane Kuehn, Patrolman Weinhardt, Patrolman Steward and Gregory Rightnour.

Chester T. Lyman, Jr., Office of Atty. Gen., Columbus, OH, for Ohio Department of Public Safety, Mitchell J. Brown and Ray Robinson.

## MEMORANDUM AND ORDER

ALDRICH, District Judge.

The plaintiffs, J.L. Spoons, Inc. and Centre Plaza, Inc., bring this 42 U.S.C. § 1983 action challenging the constitutionality of City of Brunswick Sexually Oriented Business Ordinance 150–96, which became effective December 25, 1996. The plaintiffs previously sought a preliminary injunction to prevent the City of Brunswick from enforcing the ordinance so as to prevent the opening and operation of Tiffany's Cabaret, a nightclub which features female topless dancers. On February 23, 25 and 26, 1998, this Court held

a preliminary injunction hearing. On March 16, 1998, this Court granted the plaintiffs' motion for a preliminary injunction. The parties have since filed post-hearing briefs informing the Court of their positions regarding any remaining claims, as well as their opinions as to whether any additional proceedings are necessary to reach a final decision on the merits. Based on the testimony and evidence presented at the preliminary injunction hearing and the legal arguments provided by counsel, this Court finds that it is able to reach a final decision on the merits as to most sections of the Ordinance without further proceedings.[1]

## I. Background

Beginning in 1987, J.L. Spoons, Inc. operated a nightclub named "Cheeters" located at 1245 Pearl Road in Brunswick, Ohio. On August 11, 1995, the building housing "Cheeters" was destroyed by fire. According to the testimony of Joseph Strazzanti, an owner of J.L. Spoons, Cheeters was divided into two levels. On the upper level, Cheeters' patrons were presented with dance performances by women in bikinis. On the lower level, Cheeters presented non-obscene dance performances by women who were topless and wearing G-strings. The City of Brunswick denies having any knowledge of topless dancing at Cheeters.

After the fire, J.L. Spoons and Centre Plaza, Inc., the owner of the property on which J.L. Spoons' business is located, planned to quickly rebuild and resume J.L. Spoons' business. An architect was engaged to render drawings and a site plan of the new facility. Upon completion, the site plan was submitted to the City of Brunswick Planning Commission in September of 1995. The site plan did not indicate that the facility would be used as a nightclub featuring topless dancers. The City approved the final site plan, subject to some minor revisions, at its February 1996 meeting.

According to Strazzanti's testimony, sometime after the site plan was approved, Centre Plaza entered into a construction contract, obtained a loan to finance the construction, and entered into a lease with J.L. Spoons, its anchor tenant for the new building. J.L. Spoons intends to do business as Tiffany's Cabaret, similar to the establishment of the same name located in the Flats in Cleveland. Tiffany's Cabaret is a full service restaurant and bar that features topless female dancers in G-strings.

On November 25, 1996, the City of Brunswick enacted Ordinance 150–96, which requires the licensing and regulation of "sexually oriented businesses," namely "adult cabarets." Tiffany's Cabaret falls under the ordinance's definition of "adult cabaret." If enforced, the Brunswick Ordinance would prevent Tiffany's Cabaret from opening at its current location.

The stated purpose of the Brunswick Ordinance is "to regulate sexually oriented businesses in order to promote the health, safety, morals, and general welfare of the citizens of the City, and to establish reasonable and uniform regulations to prevent the deleterious location and concentration of sexually oriented business within the City." Brunswick Ordinance 150–96 § 1. The Ordinance is generally divided into three sections: (1) provisions governing the licensing of sexually oriented business and their employees (§§ 4–11); (2) provisions governing the location of sexually oriented businesses (§ 12); and (3) provisions governing the substantive operation of such businesses (§§ 13–15).

## II. Brunswick Ordinance 150–96

### A. Licensing Scheme

Federal courts, including the Supreme Court of the United States, have held that topless dancing of the kind sought to be performed in the present case is a form of expression within the outer perimeters of the First Amendment.[2] *See, e.g., Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 565–566, 111

---

1. The plaintiffs' third amended complaint also attacks the constitutionality of Ohio Adm.Code § 4301:1–1–52 ("Rule 52") and Brunswick Cod. Ord. § 612.12. The constitutionality of these statutes will be addressed by the Court at a later date.

2. The City of Brunswick does not contend that the form of dancing involved in this matter is legally obscene or otherwise unprotected by the First Amendment.

S.Ct. 2456, 115 L.Ed.2d 504 (1991); *Schad v. Borough of Mt. Ephraim,* 452 U.S. 61, 66, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981). Such expression may be regulated through licensing laws, but those laws must contain certain procedural safeguards to ensure that First Amendment rights will not be violated. *See FW/PBS v. City of Dallas,* 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990); *Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965).

 The plaintiffs in this case have argued, among other things, that the licensing scheme contained in Brunswick Ordinance 150–96 constitutes an impermissible prior restraint on protected expression because the scheme fails to provide adequate procedural safeguards. This claim is properly characterized as a facial challenge to the licensing scheme. Such facial challenges are allowed when a "licensing scheme vests unbridled discretion in the decisionmaker" as to whether to allow or deny expressive activity. *FW/ PBS,* 493 U.S. at 223, 110 S.Ct. 596; *see also City of Lakewood v. Plain Dealer Publishing Co.,* 486 U.S. 750, 755–56, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988). "Failure to place time limitations on a decision maker is a form of unbridled discretion." *East Brooks Books, Inc. v. City of Memphis,* 48 F.3d 220, 224 (6th Cir.) (relying on *Freedman,* 380 U.S. at 56–57, 85 S.Ct. 734), *cert. denied,* 516 U.S. 909, 116 S.Ct. 277, 133 L.Ed.2d 198 (1995). Therefore, a facial challenge is appropriate when a licensing scheme creates a risk of delay "such that 'every application of the statute create[s] an impermissible risk of suppression of ideas.'" *FW/PBS,* 493 U.S. at 224, 110 S.Ct. 596 (quoting *City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 798 n. 15, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984)).

In *FW/PBS v. City of Dallas,* the United States Supreme Court, applying the majority of the procedurals protections outlined in *Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), held that a Dallas ordinance regulating sexually oriented businesses was invalid. The Supreme Court explained that "a licensing scheme creates the possibility that constitutionally protected speech will be suppressed where there are inadequate procedural safeguards to ensure prompt issuance of the license." *FW/PBS,* 493 U.S. at 226, 110 S.Ct. 596. Specifically, the Supreme Court held that a licensing scheme must ensure that (1) the licensor must make the decision whether to issue the requested license within a specified and reasonable time during which the status quo is maintained; and (2) prompt judicial review must be available in the event the license is denied. *Id.* at 228, 110 S.Ct. 596.

 The Brunswick Ordinance fails to provide either of these mandated procedural safeguards. First, the ordinance does not ensure that a decision regarding a license application will be made within a specified and reasonable time during which the status quo is maintained. Section 5(C) of the Ordinance does provide that "[w]ithin thirty days after receipt of a completed sexually oriented business application the City shall approve or deny the issuance of a license to an applicant." However, § 5(C)(6) provides that a license will not issue until and unless the health department, fire department and building official have approved the sexually oriented business as being in compliance with applicable laws and ordinances. Although § 5(E) requires that inspections by the fire department and building official be completed within 20 days of the receipt of the application, no time limit is placed on the health department to complete its inspection. In *FW/PBS,* the Supreme Court rejected a similarly constructed Dallas ordinance because it failed to provide for an effective limitation on the time within which the licensor's decision had to be made. *Id.* at 227, 110 S.Ct. 596. Like the Brunswick ordinance, the ordinance in *FW/PBS* did not set a time limit within which mandatory inspections had to be completed. *Id.* Although the City of Brunswick presented some testimony that the required health inspections would be completed by the Medina County Health Department within a few days of a request for a health inspection, there is no guarantee that such would be the case.

Second, the Ordinance does not provide for prompt judicial review in the event the license is denied. Instead, § 10(D) of the ordinance provides: "After denial of an appli-

cation, or denial of a renewal of an application, or suspension or revocation of any license, the applicant or licensee may seek prompt judicial review of such administrative action in any court of competent jurisdiction. The administrative action shall be promptly reviewed by the court." In effect, the ordinance requires a denied applicant to file a civil lawsuit pursuant to Chapter 2506 of the Ohio Revised Code in order to gain judicial review.

Three federal courts, including this Court, in the Northern District of Ohio have ruled that the procedures provided for in Chapter 2506 do not provide a constitutionally adequate avenue of prompt judicial review with respect to a locality's decision to restrain protected expressive activity. *See Cleveland's P.M. on the Boardwalk v. City of Cleveland,* slip op., No. 1:92CV1412 (N.D.Ohio Aug. 12, 1992) (White, J.), *vacated pursuant to settlement; Cascade News, Inc., et al. v. City of Cleveland, et al.,* slip op., No. 1:92CV0758 (N.D.Ohio June 15, 1992) (Aldrich, J.); *Avenue Grille, Inc. v. Rootstown Township, et al.,* slip op., No. 5:94CV0067 (N.D.Ohio April 19, 1995) (O'Malley, J.). Plainly speaking, the process a denied applicant must go through before receiving a judicial decision on the merits simply takes too long. For example, § 2506.02 allows the officer or body from which the appeal is taken up to forty days to file a transcript of "all the original papers, testimony, and evidence offered, heard, and taken into consideration in issuing the final order, adjudication, or decision appealed from." Furthermore, Chapter 2506 does not require a court to rule on the merits of an appeal within a specified period of time; rather, the appeal proceeds as any other civil action proceeds. *Cleveland's P.M.* at 5. Finally, the ability of the applicant appealing the denial of a license to obtain a temporary restraining order or preliminary injunction pending a final outcome of the lawsuit pursuant to Rule 65 of the Ohio Rules of Civil Procedure does not alter the conclusion that the Brunswick Ordinance does not provide an avenue for prompt judicial review. *Cascade News* at 14.

In summary, the Brunswick Ordinance simply does not provide for an effective limit on the time within which the licensor's decision must be made, nor does it provide an adequate avenue for prompt judicial review. The failure to provide these procedural safeguards against the suppression of protected expression renders the Ordinance's licensing scheme unconstitutional against those businesses, including Tiffany's Cabaret, which are engaged in or would like to be engaged in First Amendment protected activity.

### B. Location Restrictions

In addition to ruling on the constitutionality of the Ordinance's licensing scheme, the parties also request that this Court determine whether the Ordinance's location restrictions in § 12 are valid. Section 12 makes it a first degree misdemeanor for a person to operate a sexually oriented business in a location not permitted by § 12. The defendants argue that § 12's location restrictions are content-neutral and aimed at preventing the adverse secondary effects resulting from the existence and operation of sexually oriented businesses. The defendants further argue that § 12's location restrictions allow for sufficient alternative avenues of communication to pass muster under the First and Fourteenth Amendments in accordance with the holding in *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). The plaintiffs, of course, argue the reverse.

■ Even if this Court assumed that the Ordinance is aimed at preventing adverse secondary effects and not at prohibiting certain protected expression, the Court finds it cannot determine whether sufficient alternative avenues of communication exist as required by *Renton* because § 12 does not provide sufficient information to accurately determine where sexually oriented businesses could locate. In other words, § 12 is impermissibly vague.

As the Supreme Court of the United States held in *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972):

It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important val-

ues. First, ... we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what it prohibited, so that he may act accordingly.... Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute "abut(s) upon sensitive areas of basic First Amendment freedoms," it "operates to inhibit the exercise of (those) freedoms." Uncertain meanings inevitably lead citizens to "steer far wider of the unlawful zone" ... than if the "boundaries of the forbidden areas were clearly marked."

*Id.* at 109, 92 S.Ct. 2294 (internal citations omitted). Based upon the standard for vagueness established by the Supreme Court, § 12 is clearly unconstitutionally vague.

Section 12 fails to define or explain key terms necessary to determining an appropriate location for a sexually oriented business. First, it is a criminal offense to operate a sexually oriented business, and a license will not be issued, "in any zoning district where entertainment is permitted as defined and described in the Brunswick Zoning Code." Brunswick Ordinance § 12(A). However, "entertainment" is not defined anywhere in the current Brunswick zoning code nor in the code in effect at the time the Ordinance was enacted. Rather, the City's Chief Building official, Tex Combs, testified that he has the discretion to decide whether a particular use falls within the definition of "entertainment," a decision he would make on a case-by-case basis. Transcript I at 131.[3]

Second, § 12(B)(2) of the Ordinance prohibits an adult use from locating within 1,000 feet of a "public or private educational facili-

ty." Those terms are undefined in the Ordinance. Presumably because the Ordinance provided no explicit standards, Mr. Combs testified that it was within his discretion to determine what constituted a "public or private educational facility." Transcript I at 132–133. The breadth of his discretion, and the potential for diverse interpretations as to this provision's application, is revealed by Mr. Combs' testimony that, in his opinion, a karate instruction school would constitute a "public or private educational facility." Transcript I at 133.

Third, § 12(C)(4) requires an adult cabaret to be more than 500 feet from "any entertainment business which is oriented primarily toward children or family entertainment." Brunswick City Manager, Robert Trimble, acknowledged that these terms were undefined and stated that he had the discretion to determine whether or not the adult cabaret satisfied this distance requirement. Transcript I at 182. Brunswick City Engineer, Robert Weikel, forthrightly stated, "I do not know exactly know how to interpret [§ 12(C)(4) ] myself...." Transcript II at 357.

In addition to failing to define key terms, this Court finds the meaning of an entire subsection, § 12(I) undecipherable. Likewise, Brunswick officials who were asked to explain that provision could not do so in a defensible manner. Transcript I at 137–138, 185–186. Subsection 12(I) reads as follows:

A sexually oriented business lawfully operating is a permitted use by the location, subsequent to the grant or renewal of the sexually oriented business license, of a use listed in subsection B of this Section within 2,000 feet of the sexually oriented business. This provision applies only to the renewal of a valid license, and does not apply when an application for a license is submitted after a license has expired or been revoked.[4]

Finally, § 12 of the Ordinance fails to adequately describe how the distance between

---

3. Transcript I refers to the transcript of the proceedings on February 23, 1998. Transcript II refers to the transcript of the proceedings on February 25 and 26, 1998.

4. Subsection B prohibits a sexually oriented business from operating within 1,000 feet of a "church, synagogue[,][sic] mosque, temple or building which is used primarily for religious worship and related religious activities" and a "public or private educational facility."

an adult use and the uses set out in § 12(C) are to be measured.[5] Specifically, the Ordinance fails to specify whether the distances should be measured from the property line of the adult use or from the building line of the adult use to a use listed in § 12(C). Section 12(C)(4) also fails to specify whether the appropriate measuring mark is the property line or the building line of an entertainment business oriented primarily towards children or family entertainment.

This Court must determine the constitutionality of § 12 as it stands.[6] The Court finds that § 12 contains several undefined key terms, provides no explanation as to the appropriate measuring procedure in certain subsections and, with regard to one subsection, is entirely undecipherable. These flaws in the law not only prevent this Court from making a *Renton* determination; they also render § 12 void for vagueness because persons of ordinary intelligence must guess at its meaning and could differ as to its application.

In light of this Court's holding that the licensing scheme in the Brunswick Ordinance is constitutionally infirm because it lacks adequate procedural safeguards and that the location restrictions are void for vagueness, the Court finds it unnecessary to address the issue of whether the type of entertainment provided by Tiffany's Cabaret is a grandfathered use.

## C. Severance of Licensing Scheme and Location Restrictions Provisions

Brunswick Ordinance 150–96 contains a severability provision which reads: "If any section, subsection, or clause of this ordinance shall be deemed to be unconstitutional or otherwise invalid, the validity of the remaining sections, subsections, and clauses shall not be affected." Through their pleadings, the defendants are, in effect, requesting this Court to sever those provisions of the Ordinance which this Court deems unconstitutional from any remaining provisions of the Ordinance. Given this Court's finding that the Ordinance's licensing scheme and location restrictions are unconstitutional, the only remaining provisions are those governing the substantive operation of sexually oriented businesses (§§ 13–15), which must be read in conjunction with the preamble and the purpose and findings section (§ 1), the definitions section (§ 2) and the classification section (§ 3).

The United States Supreme Court has held that when a state statute is at issue, severability is a matter of state law. *Leavitt v. Jane L.*, 518 U.S. 137, 139, 116 S.Ct. 2068, 135 L.Ed.2d 443 (1996); *see also Women's Medical Professional Corp. v. Voinovich*, 130 F.3d 187, 202 (6th Cir.1997). Ohio courts ask the following three questions to determine whether invalid statutory provisions are properly severed from valid provisions of a statute:

(1) Are the constitutional and unconstitutional parts capable of separation so that each may read and may stand by itself? (2) Is the unconstitutional part so connected with the general scope of the whole as to make it impossible to give effect to the

---

**5.** Section 12(C) reads as follows:

A person commits a first degree misdemeanor if the person operates or causes to be operated a sexually oriented business within 500 feet of:
(1) A boundary of a residential district as defined in the Codified Ordinances of the City of Brunswick;
(2) A public park or recreational area which has been designated for park or recreational activities including but not limited to a park, playground, nature trails, swimming pool, reservoir, athletic field, basketball or tennis courts, pedestrian/bicycle paths, wilderness areas, or other similar public land within the city which is under the control, operation, or management of the city park and recreation authorities;

(3) The property line of a lot devoted to a residential use as defined in the Codified Ordinances of the City of Brunswick;
(4) An entertainment business which is oriented primarily towards children or family entertainment.

**6.** If this Court were allowed to add a limiting construction or supply definitions of key terms perhaps § 12 could withstand constitutional scrutiny. However, "the general federal rule is that courts do not rewrite statutes." *Eubanks v. Wilkinson*, 937 F.2d 1118, 1122 (6th Cir.1991). "Federal courts lack authority and power to give a limiting, narrowing construction to a state statute." *Id.* at 1125.

apparent intention of the Legislature if the clause or part is stricken out? (3) Is the insertion of words or terms necessary in order to separate the constitutional part from the unconstitutional part, and to give effect to the former only?

*State ex rel. Maurer v. Sheward,* 71 Ohio St.3d 513, 644 N.E.2d 369, 377 (Ohio1994) (quoting *Geiger v. Geiger,* 117 Ohio St. 451, 160 N.E. 28, 33 (Ohio1927)); *see Women's Medical Professional Corp.,* 130 F.3d at 202 (applying the *Geiger* three-part test to determine severability of state statute).

 The substantive operation provisions (§§ 13–15) of Brunswick Ordinance 150–96 may be read separately from the unconstitutional licensing and location provisions without the insertion of any words or terms. Additionally, the substantive operation provisions, standing alone, arguably further Brunswick's stated intent "to regulate sexually oriented businesses in order to promote the health, safety, morals, and general welfare of the citizens of [Brunswick]". Brunswick Ordinance 150–96 § 1. Thus, the Court finds that the unconstitutional licensing and location provisions of Brunswick Ordinance 150–96 are properly severed from the remainder of the Ordinance.[7]

### III. Conclusion

For the aforementioned reasons, this Court finds and orders the following:

1) the licensing scheme provisions (§§ 4–11) and the location restrictions provision (§ 12) of Brunswick Ordinance 150–96 are unconstitutional, and the City of Brunswick, its officers, agents, and servants are permanently enjoined from enforcing said provisions of Brunswick Ordinance 150–96 against the plaintiffs; and

2) the unconstitutional licensing provisions (§§ 4–11) and location restrictions provision (§ 12) of Brunswick Ordinance 150–96 are severed from the remaining provisions of Brunswick Ordinance 150–96.

7. At this point, this Court would like to clarify that it has only reached a decision as to the constitutionality of the licensing and location provisions of Brunswick Ordinance 150–96. The Court has not yet reached a decision as to the constitutionality or validity of any other provi-

A hearing is hereby scheduled for June 17, 1998 at 9:00 a.m., in Courtroom 34, Key Tower, 127 Public Square, Cleveland, Ohio, to determine the constitutionality of the remaining provisions of Brunswick Ordinance 150–96, which include the substantive operations provisions (§§ 13–15). The issue of whether the Brunswick Ordinance was passed contrary to Brunswick's Charter may also be addressed at this hearing.

IT IS SO ORDERED.

sions of Brunswick Ordinance 150–96. The purpose of severing the unconstitutional licensing and location provisions is to allow the parties to present their arguments and evidence regarding the validity or invalidity of the remaining provisions to the Court.